**THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

**CASE No.:**

---

BRUCE ARISTEO,
Plaintiff *pro se*,

v.

COUNTY OF CAMDEN; CAMDEN COUNTY OFFICE OF THE PROSECUTOR; JODY
RAINES; LAURIE A. CORSON; TRACY A. COGAN; DAVID E. DEITZ; MARK CHASE;
DAVID LICK; CHRISTOPH AULETTO; MICHAEL SNYDER; WILLARD MAHAN; MARY
KAY BAKER; GLADYS E. RODRIGUEZ; WARREN W. FAULK; MARY EVA
COLALILLO; RICHARD KING; NORMA R. EVANS; JOHN JAY HOFFMAN; JENNIFER
DANIELS; DAVID DOLSON; CARLA TAYLOR; DAVID S. OWENS JR.; CAMDEN
COUNTY DEPARTMENT OF CORRECTIONS; THE CAMDEN COUNTY WOMEN'S
CENTER; NAN S. FAMULAR; IRVIN J. SNYDER; FREDERICK J. SCHUCK; and
JOHN/JANE DOES 1-10,
Defendants.

---

CIVIL ACTION
COMPLAINT

---

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Bruce Aristeo, acting *pro se*, complains of Defendants as follows and **demands
a jury trial** pursuant to Fed. R. Civ. P. 38 and 39:

## I. <u>INTRODUCTION</u>

1.      This is a civil rights lawsuit stemming from the most deplorable form of abuse of

power: the unlawful retaliation by State Officers against a citizen who exposed government

corruption.  Mr. Aristeo charges a conspiracy to violate and the violation of his rights protected

by the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution

and those corresponding protections under Article I of the New Jersey Constitution, and brings

his action pursuant to Title 42 U.S.C. § 1983, § 1988; Title 28 U.S.C. §2201 et seq.; Title 18 U.S.C. § 4; Title 17 U.S.C. § 511; Title 15 U.S.C. § 1681p and the laws and constitution of the State of New Jersey.  Mr. Aristeo seeks declaratory and injunctive relief and monetary damages.

2.     From March 30, 2011 through the date of this filing, Mr. Aristeo was arrested and falsely accused of domestic violence by his ex paramour Defendant Jody Raines.  Because Defendant Raines was politically entwined with Camden County Public Officials, on her word alone, she was provided protection under state statutes and engaged in more than several felonies injuring Mr. Aristeo.  Records show that Mr. Aristeo reported the violations to various State Officers, but fell victim to discrimination and was denied due process and equal protection of the laws.  Upon being denied all relief, Mr. Aristeo exercised his fundamental right to defend his person and property, and peacefully publicized the injustices inflicted upon him.  Displeased with the content of Mr. Aristeo's speech, Defendant Raines and State Officers devised a plan to shut down his accounts and punish him in violation of our First Amendment freedoms.  Without warrant, State Officers arrested Mr. Aristeo, searched his residence, seized his personal property, reviewed Mr. Aristeo's personal information contained in assorted devices, destroyed, fabricated, and tampered with evidence, and then incarcerated, and tortured Mr. Aristeo.

3.     While Plaintiff Bruce Aristeo is now homeless and indigent, and can never regain his property, the time spent defending his rights and liberty from official misconduct, or the 190 days of his life he lost in jail, this civil action will allow him to be compensated for his loss of liberty and the torture and trauma that individual Defendants inflicted upon him.

4.     Conduct prior to January 2013 is complained of for reasons that: (1) the conduct is within actionable time limitations, (2) the conduct is continuous, or (3) the conduct is fraud wherefore the wrongful acts prevented Plaintiff Bruce Aristeo from asserting his claims.  The

papers attached hereto as Exhibits constitute a small fraction of nearly four years of evidence against Defendants.  The remaining documentation will be provided during the discovery period or upon request.

## II. JURISDICTION

5.      This Court has original jurisdiction over claims arising from the Constitution of the United States, and Title 42 U.S.C. § 1983, 1985, 1986, Title 15 U.S.C. and 17 U.S.C.

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 1343(a) et seq., and 1367(a).

## III. VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, on the grounds that the events set forth herein occurred in this District.

8.      There is an actual controversy between Plaintiff and Defendants within the meaning of the Declaratory Judgment Act 28 U.S.C. et seq., and Fed. R. Civ. P. 57.

## IV. PARTIES

9.      Plaintiff Bruce Aristeo is and at all relevant times an adult citizen who resides in Burlington County, the State of New Jersey.

10.      Defendant County of Camden is a county corporation operating under the laws of the State of New Jersey and is the governing body for the Camden County Office of the Prosecutor, Voorhees Township, Camden County Correctional Facility, and the Camden County Women's Center.

11.      Defendant Camden County Office of the Prosecutor ("CCOP") is now and at the time of the events complained of herein the primary agency that oversees and coordinates enforcement of New Jersey's criminal laws in the County of Camden, State of New Jersey.  It is

charged with enforcing the penal code, among other responsibilities.   As a result, Defendant CCOP Officers participated in unlawful discrimination and retaliation against Mr. Aristeo.

12.     Defendant Jody Raines ("Raines") is and at all relevant times an adult citizen who resides in Camden County, the State of New Jersey.   Raines is a "state actor" because of her "pervasive entwinement" with State Agencies and Officials.   As such, Raines acted under color of law pursuant to the statutes, ordinances, regulations, policies, and customs of Camden County and the State of New Jersey.   Raines is sued in her official and individual capacities.

13.     Defendant Laurie A. Corson ("Corson") was at the time of the events complained of herein a duly appointed Assistant Prosecutor of the Camden County Office of the Prosecutor of Camden County, State of New Jersey.   Defendant Corson is retired and sued in her individual capacity.

14.     Defendant Tracy A. Cogan ("Cogan") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed Assistant Prosecutor of Camden County, State of New Jersey.   Defendant Cogan is sued in her official and individual capacities.

15.     Defendant David E. Deitz ("Deitz") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed Assistant Prosecutor of Camden County, State of New Jersey.   Defendant Deitz is sued in her official and individual capacities.

16.     Defendant Mark Chase ("Chase") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed Assistant Prosecutor of Camden County, State of New Jersey.   Defendant Chase is sued in his official and individual capacities.

17.    Defendant Mary Kay Baker ("Baker") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed and acting Domestic Violence Advocate of Camden County, State of New Jersey.  Defendant Baker is sued in her official and individual capacities.

18.    Defendant David Lick ("Lick") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed and acting Detective of Camden County, State of New Jersey.  Defendant Lick is sued in his official and individual capacities.

19.    Defendant Christoph Auletto ("Auletto") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed and acting Detective of Camden County, State of New Jersey.  Defendant Auletto is sued in his official and individual capacities.

20.    Defendant Michael Snyder ("Snyder") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed and acting Detective of Camden County, State of New Jersey.  Defendant Snyder is sued in his official and individual capacities.

21.    Defendant Willard Mahan ("Mahan") of the Camden County Office of the Prosecutor is now and at the time of the events complained of herein a duly appointed and acting Captain of Camden County, State of New Jersey.  Defendant Mahan is sued in his official and individual capacities.

22.    Defendant Gladys E. Rodriguez ("Rodriguez") of the Camden County Office of the Prosecutor was at the time of the events complained of herein a duly appointed and acting

First Assistant Prosecutor of Camden County, State of New Jersey.  Defendant Rodriguez is now retired and is sued in her individual capacity only.

23.     Defendant Warren W. Faulk ("Faulk") was at the time of the events complained of herein the duly appointed County Prosecutor of Camden County, State of New Jersey.  At the time that the Defendant CCOP Officers referenced above conspired to falsely arrest Mr. Aristeo, those Officers were operating under the direct supervision of the CCOP.   With proper supervision and departmental control, the officers would not have chosen to conspire against Mr. Aristeo.   To that end, Defendant Faulk is sued in his and his office's supervisory role over Defendant CCOP Officers.  Defendant Faulk is retired and sued in his individual capacity only.

24.     Defendant Mary Eva Colalillo ("Colalillo") is now and at the time of the events complained of herein the duly appointed County Prosecutor of Camden County, State of New Jersey.  At the time that the Defendant CCOP Officers referenced above conspired to falsely prosecute Mr. Aristeo, those Officers were operating under the direct supervision of the CCOP.  With proper supervision and departmental control, the officers would not have chosen to conspire against Mr. Aristeo.  To that end, Defendant Colalillo is sued in her and her office's supervisory role over Defendant CCOP Officers.  Defendant Colalillo is sued in her official and individual capacity.

25.     Defendant Richard King ("King") of the State of New Jersey Office of the Attorney General ("OAG") is now and at the time of the events complained of herein a duly appointed and acting law enforcement lieutenant of the State of New Jersey.  Defendant King is sued in his official and individual capacities.

26.     Defendant Norma R. Evans ("Evans") of the State of New Jersey Office of the Attorney General was, at all times relevant to this Complaint, a duly appointed Deputy Attorney

General of the State of New Jersey.  Defendant Evans is retired and sued in her individual capacity only.

27.     Defendant John J. Hoffman ("Hoffman") is the Attorney General of the State of New Jersey.  At the time Defendant State Officers engaged in conduct contrary to the Constitutions, all Officers and Institutions were operating under the supervision of the OAG. With proper supervision and departmental control, the Officers and Institutions would not have chosen to execute the unlawful actions against Mr. Aristeo.  To that end, Hoffman is held accountable for his and his office's administrative-role over the named Agencies, Officers, Raines, and members of the criminal justice system, and sued in his official capacity only.

28.     Defendant Jennifer Daniels ("Daniels") is now and at the time of the events complained of herein a duly appointed and acting corrections officer of Camden County, State of New Jersey.  Defendant Daniels is sued in her official and individual capacities.

29.     Defendant David Dolson ("Dolson") is now and at the time of the events complained of herein a duly appointed and acting corrections officer of Camden County, State of New Jersey.  Defendant Dolson is sued in his official and individual capacities.

30.     Defendant Carla Taylor ("Taylor") was at the time of the events complained of herein a duly appointed and acting captain of the corrections officers of Camden County, State of New Jersey.  Defendant Taylor is now retired and is sued in her individual capacity only.

31.     Defendant David S. Owens, Jr. ("Owens") is now and at all times relevant to this Complaint, the duly appointed Warden of the Camden County Corrections Facility.  At the time Aristeo was incarcerated and subject to cruel and unusual punishment, Officers of the Camden County Corrections Facility were under the direction and supervision of Owens.  Defendant Owens is sued in his official and individual capacities.

32.    Defendant Camden County Department of Corrections is now and at all times relevant to this Complaint, primarily responsible for the Camden County Correctional Facility ("CCCF").  It is charged with facilitating the infliction of cruel and unusual punishment, among other violations of its responsibilities.  As a result of the acts and omissions of its officers, the CCCF failed to provide a safe and humane environment for Mr. Aristeo.

33.    Defendant Camden County Women's Center ("The Center") is now and at the time of the events complained of herein the primary entity dedicated to assisting survivors of domestic violence.  Defendant Camden County Women's Center is sued in its official capacity.

34.    Defendant Nan S. Famular ("Judge Famular") is now and at all times relevant to this Complaint, a duly appointed Superior Court Judge of Camden County, State of New Jersey, a position she continues to hold.  Defendant Famular is sued in her official capacity only.

35.    Defendant Irvin J. Snyder ("Judge Snyder") is now and at all times relevant to this Complaint, a duly appointed Superior Court Judge of Camden County, State of New Jersey, a position he continues to hold.  Defendant Snyder is sued in his official capacity only.

36.    Defendant Fredrick J. Schuck ("Judge Schuck") is now and at all times relevant to this Complaint, a duly appointed Superior Court Judge of Camden County, State of New Jersey, a position he continues to hold.  Defendant Schuck is sued in his official capacity only.

37.    Defendants John/Jane Doe 1-10 ("Doe 1-10") is a fictitious designation for a person or business entity or agent, servant or assignee or state officer thereof whose act or failure to act caused damages to Mr. Aristeo as set forth herein.

## V. <u>FACTUAL BACKGROUND</u>

38.    On November 5, 2010, Mr. Aristeo and Raines entered into a monogamous dating relationship with one another, and shortly thereafter, Raines invited Mr. Aristeo to work on

projects for her home-based company Webmarcom, LLC.  By early December, Raines accepted an invitation as a Republican Committeewoman nominee for Voorhees Township, State of New Jersey, and began a political campaign.

39.   On February 4, 2011, Mr. Aristeo ended the dating relationship with Raines for reasons of unexpected stressors brought about by her former husband's Final Judgment of Divorce (complaint Docket No. FM-04-1949-99).  Regardless of ending the relationship, Mr. Aristeo continued working on unfinished projects for Raines and Webmarcom, LLC.

### VIOLATIONS OF FEDERAL AND STATE CRIMINAL CODES, KNOWN BY THE CCOP ESTABLISHING GENDER BIAS AND THE PERVASIVE ENTWINEMENT EXISTING BETWEEN RAINES AND STATE OFFICERS

40.   On diverse dates between February 28, 2011 and May 4, 2011, in violation of Article I, Section 8 of the United States Constitution, the Copyright Act, and Title 17 U.S.C § 102(a), 506, 504(c)(2); and N.J.S. 2C:20-3, evidence shows Raines breached a contract with Mr. Aristeo and profited from his advises and Intellectual Property by failing to compensate him for completed projects consisting of his Intellectual Property.

41.   On or about March 1, 2011 through July 15, 2012, in violation of Title 18 U.S. Code § 245(b)(1)(B), (E), N.J.S. 43:21-16(b)(1), and N.J.S. 43:21-16(d)(1), evidence shows Raines wrongfully interfered with Mr. Aristeo's government assisted benefits and education. The conduct of Raines included, but not limited to, filing reports to the New Jersey Department of Labor and Workforce falsely alleging that Mr. Aristeo was employed beyond the limits of his determined benefits.  As a result, Mr. Aristeo is barred from all future government assistance.

42.   On diverse dates between March 28, 2011 and November 12, 2011, in violation of Title 47 U.S.C. § 223(a)(1)(A), 18 U.S.C. § 875(d), N.J.S. 2C:33-4(a), (c), and N.J.S. 2C:28, evidence shows Raines utilized her political ties in Voorhees Township to implicate Mr. Aristeo

of criminal conduct.  As such, Raines committed approximately twenty-four (24) acts of perjury, and on her word only, secured several Temporary Restraining Orders ("TRO"), five (5) arrest warrants, charges of Harassment, Stalking, and Violations of TRO, against Mr. Aristeo.

43.     On diverse dates between April 1, 2011 and January 2014, in violation of Title 15 U.S.C. § 1681p, n, o, q, r; and N.J.S. 2C:21-17.4 § 6(a), 7(a), evidence shows Raines wrongfully obtained Mr. Aristeo's non-public private information via an "investigative consumer report," vetted Mr. Aristeo's personal, community, and business associations, and in an act of unfair competition and an invasion of privacy, disseminated said report publicly, at various business events, and over the Internet.

44.     On Diverse dates between March 28, 2011 and the time of this filing, substantial evidence shows Raines—under the assistance and protection of the CCOP—willfully attacked Mr. Aristeo and his property, and engaged in conduct violating the New Jersey Civil Rights Act N.J.S. 10:6-1 et seq. and statutes N.J.S. 2C:13-3; N.J.S. 2C:33-4; and N.J.S. 2C:12-10.

### EXTORTION, FRAUD, AND VIOLATIONS OF THE RULES OF PROFESSIONAL CONDUCT AND JUDICIAL CONDUCT EXECUTED BY RAINES, STATE OFFICERS, AND THE CCOP

45.     On February 14, 2012, the Hon. Anthony M. Pugliese, J.S.C., Superior Court, Camden County, dismissed without prejudice a "Violation of TRO" against Mr. Aristeo.

46.     On diverse dates between April 2012 and September 2012, Mr. Aristeo made several complaints against Raines to CCOP Defendants.  Under the supervision and control of Defendants Faulk and Rodriguez, CCOP Defendants acted with unlawful discrimination and rejected Mr. Aristeo—a man—as a victim of domestic violence.  Exhibiting their discrimination, on three separate occasions CCOP Defendants made statement to the effect that being male embodies a level of callousness to injury.  Assistant Prosecutor Matt Spence and Defendant Baker, Lick, and later Mahan made the statement "Why don't you be a man and leave this

woman alone!"  The comment—regardless of the irreparable injury Mr. Aristeo suffered, and the relief guaranteed him by legislature—is discriminatory and implies a man pursuing his fundamental rights to relief from injury is unacceptable when a woman inflicts the injury.

47.     On or about April 20, 2012, notwithstanding the compelling evidence against Raines and contrary to N.J.S. 2C:25-21 et seq., the CCOP Defendants met with Raines, and without probable cause, devised a plan to cast a "False Light" upon Mr. Aristeo by utilizing the State's domestic violence statutes to discredit and convict Mr. Aristeo of a nonexistent crime, which would misdirect any relief he sought.  The Defendants' meeting resulted in Corson dismissing all charges of harassment and stalking against Mr. Aristeo, and without probable cause, unfairly revived the dismissed November 2011 "Violation of TRO."

48.     On diverse dates between May 2012 and March 2013, upon the dismissal of all charges in his favor, Mr. Aristeo pursued and exercised his liberty interests of restoring his reputation, and sought relief from nearly sixteen (16) months of false charges and the injuries thereof.  Mr. Aristeo followed clearly established law and government guidelines for amending various agency records, and lawfully filed the appropriate charges against Raines.

49.     On June 6, 2012, Mr. Aristeo hand-delivered to Corson a 3-Ring Binder containing evidence in support of the charges against Raines.  Snyder signed the receipt for the binder, which included over 200 chronologically ordered and tabbed documents form court and government records, and communications in various mediums between Raines and Mr. Aristeo.

50.     On July 10, 2012, Mr. Aristeo appeared before Judge Pugliese for Corson's revived Violation of TRO.  Mr. Aristeo was found not guilty.  The testimony by State's witnesses demonstrated that Corson and Baker coached Raines and manufactured a false legal action that infringed upon Mr. Aristeo's personal liberties.

51.     In an act of retaliation for losing the trial, Corson violated clearly established law and threatened Mr. Aristeo with criminal charges to obtain an advantage favoring Raines in a civil Family Part matter.  A county prosecutor has no jurisdiction in civil matters; Corson acted outside the bounds of her official duties and violated the Rules of Professional Conduct.  Corson refused to investigate or prosecute Raines, and instead demanded that Mr. Aristeo surrender his rights by dismissing all pending charges against Raines and volunteer to enter into an Indefinite TRO.  Otherwise, Corson would further retaliate by administratively dismissing all charges against Raines; file a stalking charge against Mr. Aristeo for causing Raines emotional distress, and then he would face a charge in Burlington County.[1]

52.     Mr. Aristeo's counsel, James M. Conley, Esq. ("Conley"), a retired CCOP Criminal Assistant Prosecutor, advised Mr. Aristeo that regardless of the evidence against Raines, no other options were available but to acquiesce to Corson's threat of extortion.

53.     On diverse dates between July 31, 2012 and September 9, 2012, unbeknownst Mr. Aristeo and prior to providing Corson with an answer to her proposal, Corson personally wrote to three municipal judges advising she was superseding their authority and dismissing the charges against Raines.  Regardless of the substantial evidence against Raines, and that Mr. Aristeo was found not guilty of the Violation of TRO, Corson made false statements of fact representing that "The State believes that there is insufficient evidence, or more accurately, no evidence to support this prosecution."[2]

54.     On August 2, 2012, counsels for Raines and Mr. Aristeo met for several hours in chambers with Judge Famular, who was informed of the extenuating circumstances leading to the premature termination of the TRO hearings.  Per Corson, Judge Famular crafted an

---

[1] EXHIBIT A
[2] EXHIBIT B

agreement ("AGMT-2") to unfairly accommodate Raines.  Convinced he would face a false criminal charge in Camden County, and then a pending charge in Burlington County, Mr. Aristeo was coerced and signed the agreement under duress.[3]

55.    On August 27, 2012, Mr. Aristeo found that Corson, Raines, and Conley jointly perpetrated a fraud and extorted his rights by manufacturing false statements of fact.  Contrary to Corson's letter of intent to Conley, no probable cause existed to support any charge against Mr. Aristeo.  Both the Burlington Prosecutor's Office and Evesham Township court clerk confirmed Mr. Aristeo was not named in any complaint; therefore, Mr. Aristeo would not have faced a charge in Burlington County.[4]  Upon this finding, Mr. Aristeo demanded Conley pursue the dismissal of AGMT-2 and file criminal actions against all those involved, but Conley refused. Unbeknownst to Mr. Aristeo, the filing of any action would implicate Conley in manufacturing a fraud; it was later discovered that Corson was a personal and family friend of Conley.

56.    On October 17, 2012, Mr. Aristeo requested an "Open Public Records Access" report from the Evesham Township Police, Burlington County.  Lt. Robert Kehoe prepared the report and represented to Mr. Aristeo that Corson requested a cross-county notification to all future complaints filed against Raines by Mr. Aristeo.

57.    On diverse dates from October 18, 2012 and thereafter, Mr. Aristeo filed a complaint with the OAG under case No.: CJ 2011-13289 regarding Corson.  Mr. Aristeo, pursuant to Supreme Court rulings, publicized his opinions and grievances regarding the corruption and injuries he suffered.

58.    On November 30, 2012, on Motion to Enforce Litigant's Rights, Mr. Aristeo presented the totality of events above to Judge Famular and demanded relief from the fraud civil

---

[3] EXHIBIT C
[4] EXHIBIT D

agreements and indefinite TRO.  Exhibiting an abuse of power, prejudice and discrimination, Judge Famular rejected the substantial evidence in favor of Mr. Aristeo's Motion, and refused to sanction Raines for fraud, and perjury.  Instead, in want of jurisdiction, Judge Famular sanctioned Mr. Aristeo for filing a frivolous action, and ordered restraints prohibiting him from speaking publicly about the injustices he suffered.  Judge Famular's failure to sanction Raines preserved the violations of Mr. Aristeo's rights and blocked future applications for relief.

59.     On December 4, 2012, Mr. Aristeo filed a complaint with the CCOP Special Investigations Unit, Lieutenant Kevin Kellejan.  Mr. Aristeo also filed the appropriate supporting charges in the various Townships and cities where Raines violated the rights and liberty of Mr. Aristeo.  Because Corson was implicated in the complaints, Corson herself administratively dismissed each and every new complaint and charge against Raines.  Moreover, this interference denied Mr. Aristeo the right to redress his grievances under the First Amendment, retain his right to privacy under the Fourth Amendment, and to defend and restore his liberty and economic freedom through lawful relief as guaranteed by the Ninth Amendment and Article I, Section 1 of the New Jersey Constitution.

60.     On April 4, 2013, Judge Famular rendered an Order stating "Family Part does not have any jurisdiction over any civil claims filed by Mr. Aristeo in the Law Division."  Judge Famular crafted AGMT-2, but later denied accountability and made false statements of fact stating counsel for the parties crafted AGMT-2.  According to the April 4, 2013 Order and statements made on the record, Judge Famular had no jurisdiction, but from August 2, 2012 through April 2, 2013 Judge Famular heard arguments, rendered orders, and sanctioned Mr. Aristeo regarding matters of AGMT-2.[5]  Because Judge Famular denied Mr. Aristeo's requests

---

[5] EXHIBIT E

to amend AGMT-2 merited on a want of jurisdiction, Mr. Aristeo then filed a complaint

regarding AGMT-2 in Law Division, Superior Court Camden County.  The Hon. Judge Robert

G. Millenky, P.J. Civ. determined that under *res judicata* Mr. Aristeo should have addressed his

civil complaint in Family Part.  Regardless of Judge Famular's Order, and evidence of fraud,

Judge Millenky preserved the agreements and TRO by dismissing the complaint with prejudice.[6]

### THE DENIAL OF DUE PROCESS AND EQUAL PROTECTIONS EXECUTED BY THE NEW JERSEY OFFICE OF THE ATTORNEY GENERAL

61.     On or about February 19, 2013, after collaborating with CCOP Defendants, and

under the supervision of Hoffman, Evans prejudicially closed Mr. Aristeo's case.  Evans refused

to address and investigate the charges against Corson, which are mainly supported by Corson's

own letters and AGMT-2.  The lack of action by Evans deprived Mr. Aristeo of his rights and

preserved the unjust restraints upon his liberty, and paved the way for a retaliatory-prosecution.

62.     All additional complaints and documentation were/are directed to King, who

refuses to investigate the continuing misconducts of CCOP Defendants.  A final complaint by

Mr. Aristeo was made to the CCOP, and was redirected by Faulk to the OAG was signed.[7]

### ENTRAPMENT, UNCONSTITUTIONAL SEARCH, SEIZURE, AND ARREST

63.     On diverse dates on or about January 2, 2013, displeased with Mr. Aristeo's

public online "forms of expression," which detailed official misconduct, CCOP Defendants and

Raines collaborated with County and Municipal Judges to devise a second retaliatory plan to

maintain the false light and unlawful restraints upon Mr. Aristeo, block his efforts to obtain

relief, and silence his speech.  Upon the instructions of Raines, and without an investigation, she

and CCOP Defendants began downloading Mr. Aristeo's videos from the Internet.

---

[6] EXHIBIT F
[7] EXHIBIT G

64. On or before April 16, 2013, Raines and CCOP Defendants devised a plan to entrap Mr. Aristeo by encouraging him to stalk and harass Raines. Over two years of documentation shows Mr. Aristeo never followed, threatened, or harassed Raines, and at no time did Mr. Aristeo approach and/or contact Raines in any capacity. CCOP Defendants engaged in conduct without probable cause to induce Mr. Aristeo to commit a criminal offense that he would have otherwise been unlikely to commit.

65. To entrap Mr. Aristeo Raines made online announcements of her intended whereabouts on April 16, 2013. The announcements were made directly on a Facebook Page that Mr. Aristeo administrates. Raines announced her planned attendance at the Cherry Hill Twilight Rotary Club; a club where she was not a member, but one that Mr. Aristeo helped form and resigned from due to harassment inflicted by Raines and members of Garden State Rotary.[8]

66. On April 16, 2013, Auletto, Baker and CCOP Defendants fitted Raines with a concealed audio/video devise in hopes to capture and record Mr. Aristeo violating his TRO. The intended entrapment resulted in failure because Mr. Aristeo never left his apartment. Mr. Aristeo is an innocent person whom the CCOP Defendants, without probable cause, sought to punish for an alleged offense, which was the manufactured product of the CCOP Defendants and Raines.

67. On May 15, 2013, under the supervision and control of Mahan, Lick telephoned Mr. Aristeo and asked, "How do we make this all go away? We want you to stop posting these videos." Lick proposed an agreement whereby CCOP Defendants would investigate Raines in exchange for Mr. Aristeo to surrender his right to speech. Mr. Aristeo accepted the exchange and scheduled a meeting on May 17, 2013 at 9:00 A.M. On May 16, 2013 Mr. Aristeo telephoned Mahan and confirmed the meeting, and requested that Mahan attend.

---

[8] EXHIBIT H

68.     On May 17, 2013, approximately 8:40 A.M., in adhering to the agreement, Mr. Aristeo loaded evidence into his vehicle in the lot of his apartment complex.  An Evesham Police Officer in a marked SUV pulled up behind Mr. Aristeo, the officer exited the SUV, and instructed Mr. Aristeo to turn and place his hands behind him.  Without incident, Mr. Aristeo followed the command and was handcuffed without notice for his restraints.  Mr. Aristeo repeatedly asked why he was handcuffed, the officer replied, "be quiet."

69.     Moments later, CCOP Defendants arrived and Auletto demanded from Mr. Aristeo the location of his apartment keys.  Without notifying Mr. Aristeo the reason for requiring his keys, Auletto searched his pockets and took the keys.  Auletto then opened Mr. Aristeo's apartment door allowing various agency officers to freely enter and walk about.  Nearly thirty minutes later, Auletto again approached Mr. Aristeo and quickly presented two pages alleging a search warrant, and notified Mr. Aristeo of the charges against him.  Because Mr. Aristeo's hands were cuffed he was unable to inspect the alleged warrant.  Mr. Aristeo requested to inspect and read the warrant, but Auletto refused his request.

70.     An Evesham Township Police Officer and Snyder then transported Mr. Aristeo to the Voorhees Police Department ("VPD") for processing and remanded to the CCCF.  Upon his arrival, officers confiscated Mr. Aristeo's cellular phone and denied him a phone call to notify family, friends, and his attorney, of his circumstances.  At no time did the officers inform Mr. Aristeo of his rights under *Miranda*, nor did they present an arrest warrant as procedure dictates.

71.     After several hours of being chained to a bench, records show at 13:04 hours (1:04 P.M.), Deputy Sheriffs B. Huggins, Badge No. 201 and M. Addezio Badge No. 145 arrived at the VPD to collect Mr. Aristeo for transport to the CCCF.  At the time Deputy Sheriffs required the documentation and warrants for transport, witnesses report a Deputy Sheriff and

Defendant Auletto arguing behind the VPD.  According to witnesses, the Deputy Sheriff refused to collect Mr. Aristeo, and yelled at Auletto "These warrants are not signed!  You guys do this to us all the time!  We're not taking him unless these are signed!"  According to the Deputy Sheriff's logbook, the transport departed the VPD at 13:24 hours en route to the CCCF.[9]

72.    Defendant Auletto fabricated and presented a forged legal document to Camden County Deputy Sheriffs and then swore under oath to several Superior Court judges that Judge Trabosh found probable cause to issue the arrest.  Ignorant to the details of his fraud, upon a *prima facie* showing, the arrest warrant fail to meet requirements pursuant to N.J.S. 2C:28-7, N.J.S. 2C:104-4 and N.J.S. 2C:104-5.  Mr. Aristeo possesses the arrest warrants exhibiting the forged ink signatures signed by two different officers, neither of which are Judge Trabosh's.[10]

THE INDICTMENT WITHOUT PROBABLE CAUSE

73.    On diverse dates between June 6, 2013 and the time of this filing, transcripts show Cogan provided Superior Court Judges with fabricated material evidence and swore under oath to knowingly false statements of fact.  The conduct of Cogan preserved Mr. Aristeo's incarceration and afforded her greater influence to potentially force Mr. Aristeo into a plea-bargain.  The five plea-bargains offered in exchange for a plea of guilt are as follows:

a.  June 18, 2013, release from jail in one week, third degree stalking, permanent criminal restraining order, psychological evaluation and treatment for one year, 5 years probation, mandatory fines and penalties;

b.  July 3, 2013, release from jail in one week, third degree stalking, permanent criminal restraining order, psychological evaluation and treatment for one year, 3 years probation, time served, mandatory fines and penalties;

---

[9] EXHIBIT I
[10] EXHIBIT J

c.  August 8, 2013, immediate release from jail, third degree stalking, permanent criminal restraining order, psychological evaluation and treatment for one year, 2 years probation, time served, mandatory fines and penalties;

d.  October 22, 2013, immediate release from jail, third degree stalking, permanent criminal restraining order, Indefinite Temporary Restraining Order issued in Family Part, 2 years probation, time served, mandatory fines and penalties;

e.  October 22, 2013, Alternative, immediate release from jail, fourth degree stalking, criminal restraining order, Indefinite Temporary Restraining Order issued in Family Part, 18 months probation, time served, mandatory fines and penalties;

74.  Cogan, and later Deitz, jointly and knowingly, made false material statements under oath, and destroyed evidence incriminating Defendant Officers of the CCOP and Raines of fraud. The destroyed evidence demonstrated that Raines engaged in conduct exemplifying her stalking and harassing Mr. Aristeo, and proved Raines was not emotionally distressed as the complaint charges; therefore, no probable cause existed to charge Mr. Aristeo.[11]

75.  On or about July 2013, in violation of Title 17 U.S.C. § 511 and N.J.S. 2C:28-6, CCOP Defendants and Raines destroyed original copies of material evidence, which doubled as Mr. Aristeo's Intellectual Property and Copyright Material. The destruction deprives the Defense an opportunity to dispute the details and validity of the State's discovery.[12]

76.  On August 7, 2013, transcripts further show Cogan, and Auletto acting as witness, swore under oath before the Grand Jury Committee to knowingly false material statements of fact, and concealed exculpatory evidence intentionally influencing a determination in favor of an

---

[11] EXHIBIT K [50:15]
[12] EXHIBIT L

indictment.  The result of their malice secured an indictment against Mr. Aristeo, but fails to define a course of conduct required by the Fair Notice Clause.[13]

### VIOLATIONS SEARCH WARRANT PROCEDURES PURSUANT TO THE OFFICE OF THE ATTORNEY GENERAL STATE OF NEW JERSEY

77.    On or about August 2013, Mr. Aristeo was provided discovery containing a copy of a Search and Seizure Warrant ("SW-1"), which was <u>not</u> presented at the time of the search.

78.    On October 10, 2013 and on November 6, 2013, Mr. Aristeo addressed Judge Snyder by letter requesting copies of SW-1 and related materials; all requests were unanswered.

79.    On December 4, 2013, Mr. Aristeo contacted Donald Cooper, of the Camden County Superior Courthouse, Criminal Records Department.  After performing an in-depth search, Mr. Cooper represented that "no search warrant or application exists in courthouse records." On that same date, Mr. Aristeo contacted Judge Snyder's clerk, Ms. Arielle Catz, requesting copies of SW-1.  Ms. Catz represented "there is no entry of record in <u>her</u> system for a search warrant issued to [Mr. Aristeo's] address or the date of application."  On a return call, Judge Snyder's secretary stated, "there is no record of the search application in <u>her files</u>, and [Mr. Aristeo] should contact the prosecutor's office for further information."

80.    Additional departments and agencies confirming "no record or copy" on file of the search warrant or application: (1) On February 25, 2014, Marcia Rebimbas, Superior Courthouse Asst. Chief of Criminal Division; (2) On October 14, 2014, Kelly Bollinski, Criminal Records Supervisor; (3) Voorhees Police Department; (4) Christopher Chew, Chief of Police, of the Evesham Police Department; and (5) Burlington County Office of the Prosecutor. Records show only Judge Snyder possessed the single copy of the search warrant, and it wasn't until approximately two months after the search that a State Officer observed the warrant.

---

[13] EXHIBIT M

**VIOLATIONS OF THE CODE OF JUDICIAL CONDUCT, INCOMPETENCE, PREDETERMINING THE OUTCOME OF A TRIAL, FAILURE TO ADHERE TO FEDERAL JUDGEMENTS**

81.    On diverse dates between November 21, 2013 and November 20, 2014, Judge Schuck, void of any interest of justice, assisted CCOP Defendants in executing a retaliatory-prosecution against Mr. Aristeo, and did so by rendering orders to deliberately conceal evidence of misconduct.   This provided CCOP Defendants an unrestrained path to engage in further misconducts and safeguard the interests of both the State and County from liability.

82.    Mr. Aristeo believed Judge Schuck was obligated to proceed by the Rule of Law and presented the evidence against the CCOP Officers and Raines.   Instead of lawfully addressing the matter, Judge Schuck rejected the material evidence against the CCOP Officers. That evidence included, but was not limited to:

    a.  November 21, 2013: Original copies of the arrest warrants exhibiting forged signatures;

    b.  November 21, 2013: Photographs of Defendant Auletto violating the terms of the search warrant and tampering with evidence;

    c.  November 21, 2013: Photographs of Defendant Auletto fabricating evidence;

    d.  March 19, 2014: Grand Jury transcripts demonstrating that both Defendants Corson and Auletto swore under oath to false material statements of fact;

    e.  November 21, 2013: Documents revealing the search and seizure of property was without probable cause and warrant, and that probable cause was found on knowingly false material statements of fact made by Defendant Auletto;

    f.  *Passim*: Court transcripts of Defendant Cogan admitting to participating in the destruction of the original material evidence;

g.  November 20, 2014: Court transcripts demonstrating Defendant Cogan and Auletto knowingly concealed exculpatory evidence vindicating Mr. Aristeo.

83.     In violation of Federal judgments regarding *Brady*, <u>R</u>. 3:13-3, and their progeny, Judge Schuck denied every Motion to Compel exculpatory evidence—directly related to the case—and rendered paradoxical orders stating that Mr. Aristeo failed to show the favorable value of the evidence while denying Mr. Aristeo the ability to prove its favorable value.  By Judge Schuck blocking the ability to validate State's evidence, Mr. Aristeo is forced to build a Defense upon tainted evidence, of which Mr. Aristeo raised a substantial question to its legitimacy.

84.     Judge Schuck denied a final Motion for Discovery in the form of data, documents, and communications stored on the computer of the alleged victim Raines, in the possession of the CCOP.  Cogan admitted the evidence was in the possession and control of the State, but conveniently failed to include the evidence in discovery.  By order of Judge Schuck, the State is not required to produce that material.  The suppressed evidence reveals the retaliatory nature of charges against Mr. Aristeo, the true emotional state of Raines, her anonymous harassing communications to Mr. Aristeo, and the pervasive entwinement with CCOP Officers, and Officials in Camden County.

85.     Judge Schuck exhibited extreme prejudice and unfairly directed the course of the trial through pretrial hearings by predetermining and then prescribing only the needs of the State, thus remedying any deficiency for obtaining a conviction.  Judge Schuck rendered contradictory orders, on September 2, 2014 freely made orders favoring the State without a moving party, made false statements of fact, and assisted in the concealing and suppression of exculpatory evidence.[14]

---

[14] EXHIBIT N

86.     The bail conditions ordered by Judge Schuck extort the fundamental rights of Mr. Aristeo in exchange for freedom.  Mr. Aristeo is restricted from self-expression, free assembly, redressing grievances, earning a livelihood, the freedom of false restraints, and obtaining, owning, and protecting property.  The orders of Judge Schuck violate lawful jurisprudence and exceed the jurisdictions of a Superior Court Judge.

87.     On June 4, 2014, Mr. Aristeo filed a Motion for a Protective Order requesting the protection of the Court because he followed to a local Starbucks Coffee Shop and threatened by a State's witness.  Attached to the Motion, a single photograph of the witness sitting across from Mr. Aristeo and glaring at him.  On that same day Deitz immediately opposed the Motion stating there was no legal standing for issuing a restraining order against the witnesses.  On June 5, 2014, Judge Schuck denied the motion and Mr. Aristeo's person remained at risk.

88.     On November 26, 2014, Mr. Aristeo memorialized the events in a letter to Colalillo detailing the official misconducts and entwinements between CCOP Defendants and Raines.  The letter included the details supporting federal and state violations by Raines, and demonstrated an unlawful discrimination, denial of due process protections, and victim rights under Article I, Section 22 of the New Jersey State Constitution.  While having the power to do so, Colalillo did not investigate.

GENDER DISCRIMINATION AND FALSE ADVERTISING

89.     On diverse dates between November 2011 and August 2012, Mr. Aristeo contacted "The Center" and pleaded for help as a victim of domestic violence, but fell victim to discrimination and was denied support services, thereby increasing his injury.

90.     An advocate represented they have "no support for men," but pursuant to The Center's website, "Services are provided . . . without regard to . . . gender . . . ."  Because The

23

Center advertised it provided services without regard to gender, Mr. Aristeo believed he was a victim of domestic violence and could obtain support for dealing with the emotional trauma of being entrenched in false legal actions that interfered with his everyday life.[15]

91.   The Center and the CCOP act jointly and are funded by the State.  They both provide support in the form of education and relief to victims pursuant to domestic violence legislation.  The Center provides services to only women and children, which perpetuates the discrimination against men and preserves the dysfunctional implementation of domestic violence procedures; subsequently opposing legislation's intent for equal protection.

### UNLAWFUL INCARCERATION AND RESTRAINTS, AND CRUEL AND UNUSUAL PUNISHMENT

92.   Upon Mr. Aristeo's incarceration, he was placed in a small cell constructed only for two (2) inmates, but correctional officers forced four (4) inmates in each cell.  Before his move to general population, Mr. Aristeo had spent approximately 694 hours in a small dehumanizing cell, of which he was released a total of approximately 3 hours to move about. Mr. Aristeo was denied civil amenities such as clean drinking water, a shower, a toothbrush, shoes, clean clothes, communication to the outside world, and then denied necessities to clean his cell of debris, and the remnants of inmates' urine, fesses, and vomit.  Mr. Aristeo was also denied a doctor's care, and although the food was extremely diluted and less than nutritious, the physical ailment disabled his abilities to eat and move about for four (4) days.  Moreover, Mr. Aristeo was deliberately isolated from the outside world.  Mr. Aristeo witnessed correctional officers discard his and other inmate requests, thus resulting in the denial of speaking with social worker to notify his distressed family and friends of his whereabouts.  Correctional officers denied food and physically threatened Mr. Aristeo.  Mr. Aristeo was a victim of correctional officers negligence leading to an attack—while he sleep—by a man prematurely released from

---

[15] EXHIBIT O

the mental health ward; after an investigation, it was found that Mr. Aristeo was not guilty of violence. Mr. Aristeo was also denied access to a law library, denied access to a computer to research his case, and denied the services of a paralegal to assist in his defense.

93. On May 28, 2014, Judge Schuck denied Mr. Aristeo's Motion to Reduce Bail Conditions on the grounds of arguable violations to the terms as required by the restrictions. Mr. Aristeo provided documentation showing he had <u>not</u> violated the terms because Correctional Officer De Angelis communicated certain allowances via email and text message, all of which Mr. Aristeo was in full compliance. Unbeknownst to Mr. Aristeo, officers Taylor, Dolson, and Daniels willfully fabricated and affirmed documents demonstrating Mr. Aristeo had violated the terms, and then communicated those falsehoods to Cogan and Judge Schuck. On July 17, 2014, Mr. Aristeo reported the fraud to Lt. Christopher Foschini, of the CCCF Internal Affairs Unit. According to Lt. Foschini, he found that the conduct of Taylor, Dolson, and Daniels was cause to forward the complaint to the Special Prosecutions Unit, of the CCOP. On November 12, 2014, Assistant Prosecutor Laura Croce administratively dismissed the charges leaving Mr. Aristeo's record tainted by three (3) false official reports.

## VI. <u>CONCLUSION</u>

94. Each of the Defendants personally participated in the unlawful conduct described herein which caused the deprivation of Mr. Aristeo's fundamental rights and individual liberty, acted in concert with other Defendants who participated in or acquiesced to the unlawful conduct, failed to intervene or stop other Defendants from engaging in the unlawful conduct while possessing the power to do so, or knew of and condoned the unlawful conduct.

95. Each Defendant acted knowingly and intentionally, willfully and wantonly, or with reckless or callous disregard for, or with deliberate indifference to Mr. Aristeo's rights, and

as a result are the direct and proximate cause of Mr. Aristeo's significant emotional distress, loss of appetite, insomnia, anxiety, discomfort, damage to his reputation, financial hardship, loss of property, homelessness and indigence.

96.     The Defendants unlawful conduct described herein directly and proximately caused Mr. Aristeo the loss of opportunity to engage in expression, association, and deprived him of economic liberty during the period he was under court order, incarcerated, in the custody of Pretrial Services, and while his property was confiscated.

97.     Because Defendants continue to maintain publicly that the actions taken against Mr. Aristeo were lawful and proper, Mr. Aristeo remains in danger of being punished for exercising his right to defend his liberty, and freedom of expression if he engages in the future in speech that is or is not derogatory towards the Defendants; and because Mr. Aristeo and the online accounts under his control continue to be heavily monitored by the Defendants, his fear of continued retaliation and irreparable injury is real.  Mr. Aristeo is currently under Court Orders in want of jurisdiction that extort and restrict his expression of thought beyond the authority of which a Superior Court judge may order.  Mr. Aristeo has no adequate remedy at law and is irreparably harmed in that he wishes to be able to parody, satirize, and otherwise engage in humorous expression about the Defendants in the future—including through the use of risqué language—but is chilled from doing so because he reasonably fears retaliation from Defendants if he engages in such protected expression.

## VII. **RELIEF**

### FIRST CLAIM FOR RELIEF

**VIOLATION OF ARTICLE I, SECTION 1 OF THE NEW JERSEY CONSTITUTION (CRIMINALIZATION OF INHERENT LIBERTY) ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 *ET SEQ.* AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10**

98.     The allegations of paragraphs 1 through 97 are realleged and incorporated by reference as if fully set forth herein.

99.     Article I, Section 1 of the New Jersey Constitution provides: "All persons . . . have certain natural and unalienable rights, among which are . . . defending life and liberty, of . . . protecting property, and of pursuing and obtaining safety . . . ."

100.    Defendants' actions violate the New Jersey Constitution, which prohibits government interference with the inherent and inalienable right to defend person and property. Property is more than a physical thing; it is also the sum of one's fundamental rights and liberty. Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—persecuted and punished Mr. Aristeo for acting on his own behalf and defending his rights and liberty interests when he fell victim to the Defendants' discrimination, harassment, extortion, and the criminalization of federally protected conduct.

101.    As a result of Defendants' actions, Mr. Aristeo was falsely arrested for crimes he did not commit.  Defendants' criminalization of inherent liberty violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

### SECOND CLAIM FOR RELIEF

**VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION
(CRIMINALIZATION OF THE FREEDOM OF SPEECH)
ACTIONABLE PURSUANT TO 42 U.S.C. § 1983
AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10**

102.    The allegations of paragraphs 1 through 101 are realleged and incorporated by reference as if fully set forth herein.

103.    The First Amendment of the U.S. Constitution provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

104.    Defendants' actions violate the First Amendment of the U.S. Constitution, which prohibit government interference with the inherent and inalienable right to speak and publish on matters of public concern, and to assemble with other like-minded individuals who wish to support and share similar concerns within the context of clearly established law.   Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—persecuted and punished Mr. Aristeo for his speech.

105.    As a result of Defendants' actions, Mr. Aristeo was falsely arrested for crimes he did not commit.   Defendants' criminalization of protected speech violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

### THIRD CLAIM FOR RELIEF

#### VIOLATION OF ARTICLE I, SECTION 6 OF THE NEW JERSEY CONSTITUTION
#### (CRIMINALIZATION OF THE FREEDOM OF SPEECH)
#### ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 *ET SEQ.*
#### AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10

106.    The allegations of paragraphs 1 through 105 are realleged and incorporated by reference as if fully set forth herein.

107.    Article I, Section 6 of the New Jersey Constitution provides: "Every person may freely speak, write and publish his sentiments on all subjects, . . .   No law shall be passed to restrain or abridge the liberty of speech or of the press.

108.    Defendants' actions violate the New Jersey Constitution, which prohibit government interference with the inherent and inalienable right to speak and publish on matters of public concern, and to assemble with other like-minded individuals who wish to support and

share similar concerns within the context of clearly established law.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—persecuted and punished Mr. Aristeo for his speech.

109.    As a result of Defendants' actions, Mr. Aristeo was falsely arrested for crimes he did not commit.  Defendants' criminalization of protected speech violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

### THIRD CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION**
**(FALSE ARREST)**
**ACTIONABLE PURSUANT TO 42 U.S.C. § 1983**
**AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10**

110.    The allegations of paragraphs 1 through 109 are realleged and incorporated by reference as if fully set forth herein.

111.    The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, . . . and effects, against unreasonable . . . seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . . "

112.    Defendants' actions violate the Fourth Amendment of the U.S. Constitution, which prohibits arrest and/or search and seizure without probable cause.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—altered and concealed computer data regarding (i.e., fabricated evidence against) Mr. Aristeo and illegally searched and seized his property and arrested him.

113.    As a result of Defendants' actions, Mr. Aristeo was falsely arrested and his property confiscated for crimes he did not commit.  Defendants' refusal to independently evaluate probable cause and evidence tampering violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

**FOURTH CLAIM FOR RELIEF**

**V**IOLATION OF **A**RTICLE **I, S**ECTION **7** OF THE **N**EW **J**ERSEY **C**ONSTITUTION
**(F**ALSE **A**RREST**)**
**A**CTIONABLE **P**URSUANT TO **N.J.S.A. 10:6-1** *ET SEQ.*
**A**GAINST **A**LL **S**TATE **O**FFICERS**, CCOP, CCOP D**EFENDANTS**, R**AINES**, D**OE **1-10**

114.   The allegations of paragraphs 1 through 113 are realleged and incorporated by reference as if fully set forth herein.

115.   The Article I, Section 7 of the New Jersey Constitution provides: "The right of the people to be secure in their persons, houses, . . . and effects, against unreasonable . . . seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ."

116.   Defendants' actions violate the New Jersey Constitution, which prohibits arrest and/or search and seizure without probable cause.   Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—altered and concealed computer data regarding (i.e., fabricated evidence against) Mr. Aristeo and illegally searched and seized his property and arrested him

117.   As a result of Defendants' actions, Mr. Aristeo was falsely arrested and his property confiscated for crimes he did not commit.   Defendants' refusal to independently evaluate probable cause and evidence tampering violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

**FIFTH CLAIM FOR RELIEF**

**V**IOLATION OF THE **F**OURTH **A**MENDMENT TO THE **U.S. C**ONSTITUTION
**(P**RE**-C**ONVICTION **M**ALICIOUS **P**ROSECUTION**)**
**A**CTIONABLE **P**URSUANT TO **42 U.S.C. § 1983**
**A**GAINST **A**LL **S**TATE **O**FFICERS**, CCOP, CCOP D**EFENDANTS**, R**AINES**, D**OE **1-10**

118.   The allegations of paragraphs 1 through 117 are realleged and incorporated by reference as if fully set forth herein.

119.     The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, . . . and effects, against unreasonable . . . seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . . "

120.     Defendants' actions violate the Fourth Amendment to the U.S. Constitution, which prohibits the wrongful institution of legal process.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—altered and concealed computer data regarding Mr. Aristeo, searched and seized his property, falsely arrested him, and provided the Courts and Grand Jury with faulty evidence.  As such, Defendants wrongly instituted a legal process against Mr. Aristeo in violation of the Fourth Amendment.

121.     Defendants' actions subjected Mr. Aristeo to pre-conviction malicious prosecution for crimes he did not commit.  But for Defendants' conduct, Mr. Aristeo would not have endured the wrongful institution of legal process and the detention that resulted therefrom.  Defendants' wrongful actions violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF ARTICLE I, SECTION 7 OF THE NEW JERSEY CONSTITUTION
### (PRE-CONVICTION MALICIOUS PROSECUTION)
### ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 *ET SEQ.*
### AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10

122.     The allegations of paragraphs 1 through 121 are realleged and incorporated by reference as if fully set forth herein.

123.     The Article I, Section 7 of the New Jersey Constitution provides: "The right of the people to be secure in their persons, houses, . . . and effects, against unreasonable . . . seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . . "

124.    Defendants' actions violate the New Jersey Constitution, which prohibits the wrongful institution of legal process.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—altered and concealed computer data regarding Mr. Aristeo, searched and seized his property, falsely arrested him, and provided the Courts and Grand Jury with faulty evidence.  As such, Defendants wrongly instituted a legal process against Mr. Aristeo in violation of the New Jersey Constitution.

125.    Defendants' actions subjected Mr. Aristeo to pre-conviction malicious prosecution for crimes he did not commit.  But for Defendants' conduct, Mr. Aristeo would not have endured the wrongful institution of legal process and the detention that resulted therefrom. Defendants' wrongful actions violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

### EIGHTH CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION (PRE-CONVICTION RETALIATORY-PROSECUTION) ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10**

126.    The allegations of paragraphs 1 through 125 are realleged and incorporated by reference as if fully set forth herein.

127.    The Fourteenth Amendment, Section 1, provides: "No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ." (The Fourth Amendment to the U.S. Constitution is recited, in part, above.)

128.    Defendants' actions violate the Fourth and Fourteenth Amendments to the U.S. Constitution, which prohibit pre-conviction incarceration that results from retaliatory-

prosecution.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—altered and concealed computer data regarding Mr. Aristeo, searched and seized his property, falsely arrested him and instituted his retaliatory-prosecution, all of which led to his wrongful incarceration.  As a result of Defendants' institution of a retaliatory-prosecution premised on a false arrest, Mr. Aristeo endured pre-conviction incarceration.

129.   Defendants' actions subjected Mr. Aristeo to pre-conviction retaliatory-prosecution for crimes he did not commit.  But for Defendants' conduct, Mr. Aristeo would not have endured the wrongful institution of legal process and the detention that resulted therefrom. Defendants' retaliatory and malicious actions violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

### NINTH CLAIM FOR RELIEF

**VIOLATION OF ARTICLE I, SECTION 1 AND 7 OF THE NEW JERSEY CONSTITUTION**
**(PRE-CONVICTION RETALIATORY-PROSECUTION)**
**ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 *ET SEQ.***
**AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10**

130.   The allegations of paragraphs 1 through 129 are realleged and incorporated by reference as if fully set forth herein.

131.   Article I, Section 1 of the New Jersey Constitution provides: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." (Article 1, Section 7 of the New Jersey Constitution is recited, in part, above.)

132.   Defendants' actions violate Article 1, Section 1 and 7 of the New Jersey Constitution, which prohibit pre-conviction incarceration that results from retaliatory-

prosecution.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—altered and concealed computer data regarding Mr. Aristeo, searched and seized his property, falsely arrested him and instituted his retaliatory-prosecution, all of which led to his wrongful incarceration.  As a result of Defendants' institution of a retaliatory-prosecution premised on a false arrest, Mr. Aristeo endured pre-conviction incarceration.

133.    Defendants' actions subjected Mr. Aristeo to pre-conviction retaliatory-prosecution for crimes he did not commit.  But for Defendants' conduct, Mr. Aristeo would not have endured the wrongful institution of legal process and the detention that resulted therefrom. Defendants' retaliatory and malicious actions violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

**TENTH CLAIM FOR RELIEF**

**VIOLATION OF THE FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION (SUBSTANTIVE DUE PROCESS) ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10**

134.    The allegations of paragraphs 1 through 133 are realleged and incorporated by reference as if fully set forth herein.

135.    The Fourteenth Amendment to the U.S. Constitution encompasses a substantive component.  This portion of the Fourteenth Amendment prohibits officials' actions that shock the conscience and/or upset the balance of "ordered liberty."

136.    If any action by a justice officer shocks the conscience, it is the fabrication of evidence to arrest an innocent person.  There can be no "ordered liberty" when justice officers manufacture evidence against innocent people and send them to jail for crimes they did not commit.  Defendants—through their own actions and/or their policies and supervision, or the

lack thereof—violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

## ELEVENTH CLAIM FOR RELIEF

### VIOLATION OF ARTICLE I, SECTION 1 OF THE NEW JERSEY CONSTITUTION
(SUBSTANTIVE DUE PROCESS)
ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 *ET SEQ.*
AGAINST ALL STATE OFFICERS, CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10

137.    The allegations of paragraphs 1 through 136 are realleged and incorporated by reference as if fully set forth herein.

138.    Article I, Section 1 of the New Jersey Constitution encompasses a substantive component.  This portion of the New Jersey Constitution prohibits officials' actions that shock the conscience and/or upset the balance of "ordered liberty."

139.    If any action by a justice officer shocks the conscience, it is the fabrication of evidence to arrest an innocent person.  There can be no "ordered liberty" when justice officers manufacture evidence against innocent people and send them to jail for crimes they did not commit.  Defendants—through their own actions and/or their policies and supervision, or the lack thereof—violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

## TWELFTH CLAIM FOR RELIEF

### CONSPIRACY TO VIOLATE CIVIL RIGHTS
ACTIONABLE PURSUANT TO 42 U.S.C. § 1983
AGAINST ALL DEFENDANTS

140.    The allegations of paragraphs 1 through 139 are realleged and incorporated by reference as if fully set forth herein.

141.    A civil conspiracy is a combination of two or more persons acting in concert to commit an individual act.  The principal elements of the conspiracy are an agreement between the parties to inflict a wrong against another, and an overt act that results in damage.

142.    Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert to deprive Mr. Aristeo of his clearly established federal and state constitutional rights and liberty, as alleged above.

143.    In furtherance of the conspiracy, the CCOP, each Justice officer Defendant, and Raines engaged in and facilitated numerous overt acts, including, without limitation, the following:

   i.   One or more of the Defendants had a pre-arranged plan with Raines to shelter her from prosecution for crimes she committed;

   ii.  Under the plan, CCOP Defendants would arrest and charge Mr. Aristeo solely on the word of Raines and without independently evaluating the presence of probable cause;

   iii. One or more of the individual Defendants altered and concealed computer data regarding (i.e., deliberately fabricated evidence against) Mr. Aristeo and then in concert proceeded to arrest him for a crime he did not commit; and,

   iv.  The individual Defendants continued to lie to the judiciary and the Grand Jury regarding Mr. Aristeo's purported guilt, and they intentionally concealed exculpatory evidence to these authorities, all of which resulted in physical and emotional injury to Mr. Aristeo.

144.    As a result of Defendants' conspiracy and actions in furtherance thereof, Mr. Aristeo was falsely incarcerated and suffered numerous other injuries—all for crimes he did not

commit.  But for Defendants' conduct—their own actions and/or their policies and supervision, or the lack thereof—Mr. Aristeo would not have endured these serious injuries and violations of his constitutional rights and inherent liberties.

## THIRTEENTH CLAIM FOR RELIEF

### VIOLATION OF THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION (CRUEL AND UNUSUAL PUNISHMENTS) ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

145.    The allegations of paragraphs 1 through 144 are realleged and incorporated by reference as if fully set forth herein.

146.    The Eighth Amendment to the U.S. Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

147.    Defendants' actions violate the Eighth Amendment of the U.S. Constitution, which prohibits the infliction of cruel and unusual punishments.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—participated in the destruction of Mr. Aristeo's reputation and status in organized society, unjustly immersed him in a criminal prosecution, and subjected him to inhumane treatment perverting the preservation of his dignity.

148.    As a result of Defendants' actions, Mr. Aristeo was cast in a false light, falsely arrested, incarcerated, and treated inhumanely.  Defendants' deliberate indifference to liberty violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

## FOURTEENTH CLAIM FOR RELIEF

### VIOLATION OF ARTICLE I, SECTION 12 OF THE NEW JERSEY CONSTITUTION (CRUEL AND UNUSUAL PUNISHMENTS) ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 *ET SEQ.*

**AGAINST ALL DEFENDANTS**

149.    The allegations of paragraphs 1 through 140 are realleged and incorporated by reference as if fully set forth herein.

150.    Article I, Section 12 of the New Jersey Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

151.    Defendants' actions violate the New Jersey Constitution, which prohibits the infliction of cruel and unusual punishments.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—participated in the destruction of Mr. Aristeo's reputation and status in organized society, unjustly immersed him in a criminal prosecution, and then subjected Mr. Aristeo to inhumane treatment perverting the preservation of his dignity.

152.    As a result of Defendants' actions, Mr. Aristeo was cast in a false light, falsely incarcerated, and treated inhumanely.  Defendants' deliberate indifference to liberty violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

### FIFTEENTH CLAIM FOR RELIEF

#### VIOLATION OF THE FEDERAL COPYRIGHT ACT
#### (THEFT AND DESTRUCTION OF PROPERTY)
#### ACTIONABLE PURSUANT TO TITLE 17 U.S.C. § 511
#### AGAINST CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10

153.    The allegations of paragraphs 1 through 152 are realleged and incorporated by reference as if fully set forth herein.

154.    The conduct described and reference herein is actionable pursuant to Article I, Section 8 of the United States Constitution, the Copyright Act, and Title 17 U.S.C.

155.    Intellectual Property is defined as any product of the human intellect, typically characterized as non-rivalrous public goods, the law protects from unauthorized use.  Property is anything of value, including but not limited to, information, data, and computer software, in human or computer readable form, copies or originals.

156.    Title 17 U.S.C. § 106A(a)(3) Federal Copyright law provides: ". . . the author of a work of visual art shall have the right—

> a.    To prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and

> b.    To prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

157.    Title 17 U.S.C. § 511 Federal Copyright law provides: "Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner . . . under this title."

158.    Defendants' actions violate the U.S. Constitution and Federal Copyright Law, which prohibit any intentional distortion, mutilation, or modification of a work.  Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—destroyed and conspired to destroy original digital works of

visual art and personal expression authored and owed by Mr. Aristeo, which where presented online and stored on his personal computer devices.

159.    As a result of Defendants' actions, Mr. Aristeo suffers emotional distress and loss of decades of personal works of art and expression.  Defendants' deliberate indifference to one's property violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

**SIXTEENTH CLAIM FOR RELIEF**

**VIOLATION OF THE FEDERAL CONSUMER PRIVACY ACT**
**(OFFENCE AGAINST THE UNITED STATES)**
**ACTIONABLE PURSUANT TO TITLE 18 U.S.C. § 3 AND 4**
**AGAINST CCOP, CCOP DEFENDANTS, RAINES, DOE 1-10**

160.    The allegations of paragraphs 1 through 159 are realleged and incorporated by reference as if fully set forth herein.

161.    Title 18 U.S.C. § 3 provides: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent [her] apprehension, trial or punishment, is an accessory after the fact.

162.    Title 18 U.S.C. § 4 provides: "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned . . . or both."

163.    Defendants' actions violate Title 18 U.S.C. Federal Criminal Statutes, which prohibit concealing the commission of a felony.   Acting individually and in concert, Defendants—through their own actions and/or their policies and supervision, or the lack thereof—had knowledge and physical evidence of the commission of several felonies executed by Raines, and provided protection that hindered her apprehension and prosecution.  The felonies

included, but not limited to, violations of: The Federal Trade Commissions Act, Title 15 U.S.C. § 1681q; The Copyright Act, Title 17 U.S.C.; The Privacy of Consumer Financial Information Act, Title 17 C.F.R.; The Telecommunications Act, Title 47 U.S.C. § 223; and The Federal-State Unemployment Compensation Act.

164.    As a result of Defendants' actions, Mr. Aristeo suffers severe irreparable injury. Defendants' deliberate indifference to Federal Regulations violated clearly established law; no reasonable criminal justice officer would believe that these actions were lawful.

## VIII. <u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Mr. Aristeo respectfully requests the following relief:

A.  A declaratory judgment that Defendants conspired to and violated Mr. Aristeo's right to freedom of expression and his right to be free from unreasonable searches, seizures, and invasions of privacy guaranteed by the First and Fourth Amendments of the United States Constitution and Article I, Sections 6 and 7 of the New Jersey Constitution;

B.  A declaratory judgment that Defendant Judges and the Attorney General be publically reprimanded for violating Mr. Aristeo's protected rights and liberty interests;

C.  Permanent injunctive relief declaring all orders, including, but not limited to the August 2, 2012 "indefinite TRO," rendered by Defendant Famular under case No.: FV-04-1476-12, and FV-04-1476-12-B, as void for fraud, and dismissed with prejudice *ab initio*;

D.  Permanent injunctive relief declaring the April 19, 2011 and August 2, 2012 agreements, related to case No.: FV-04-1476-12, and FV-04-1476-12-B, and between Bruce Aristeo and Jody Raines, as null and void;

E.  Permanent injunctive relief prohibiting the County of Camden and State Criminal Justice officers from engaging in future efforts to suppress constitutionally protected speech that is derogatory towards a public figure;

F.  Permanent injunctive relief prohibiting the County of Camden and State Criminal Justice officers from engaging in future efforts that invade the privacy rights of all citizens of the State of New Jersey;

G.  Compensatory damages, in an amount to be ascertained at trial, for the unlawful suppression of Mr. Aristeo's freedom of expression and the unlawful detention, searches and seizures, arrest, incarceration, torture, and indigence complained of herein;

H.  Compensatory damages, in an amount to be ascertained at trial, for the unlawful destruction and/or mutilation of Mr. Aristeo's personal property complained of herein;

I.  Compensatory damages, in an amount to be ascertained at trial, for the unlawful interference to Mr. Aristeo's economic liberty complained of herein;

J.  Punitive damages from individual defendants, in an amount to be ascertained at trial, for Defendants' reckless and callous disregard of Mr. Aristeo's constitutional rights and liberties, and the torture he endured while incarcerated and immersed in a false criminal action;

K.  Award pre-judgment and post-judgment interest and recovery of his costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, N.J.S.A. 10:6-2, and other applicable laws;

L.  Issue an injunction that will mandate institutional changes so that such injustice does not occur again at the expense of Mr. Aristeo and/or Camden's other residents, or residents in the surrounding counties; and

M.  Such other and further relief as this Court may deem just and proper.

## NOTICE OF *PER DIEM* TIME-UNIT CLOSING ARGUMENT

PLEASE TAKE NOTICE that Plaintiff(s) will use *per diem* argument during closing argument at Trial and suggest to Jury that unliquidated damages be calculated on a time-unit basis without reference to a specific sum.  Proper explanatory instructions to jury shall be requested.

## DEMAND FOR DISCOVERY

Plaintiff hereby demands that answering defendant respond to the Notice of Deposition, Request for Production of Documents and Interrogatories that follow.

Respectfully submitted,

**BRUCE ARISTEO**
Plaintiff, *pro se*

DATE: February 2, 2015

43